May it please the Court and Counsel, Michael Holacek for the Appellant, OptumRx. The trial court denied Optum's motion to compel arbitration. The court erred in interpreting the party's contract and finding a conflict between an optional mediation clause and a binding arbitration clause. There is no conflict because the parties can easily comply with both. The parties here agree on what the test is for a conflict. Two provisions conflict if it's impossible to comply with both of them. We showed here how it is not impossible to comply with the provider agreement's dispute resolution protocol, which requires a meet and confer and an optional mediation, and the provider manual's binding arbitration clause. We cited cases throughout the country, same fact situation, where you've got an optional dispute resolution protocol followed by a mandatory binding dispute resolution protocol. Every court to address this issue has found no conflict, enforced both terms, and even found it desirable and commonplace to have those two sets of procedures. If we agree, I think, I'm keeping the party straight here, but I think your argument is that this is a decision or a determination that should have been made by the arbiter in the first case. Is that correct? So if we agree with you on that, we don't have to get into kind of what I would call the merits of what you're talking about. Is that correct? Correct. There's a delegation clause, and LACI can make this same argument to the arbitrator. And I think even before that, in my mind at least, is the issue of waiver, which is raised by your opponent here, by your friend on the other side. Do you agree that we can rule on waiver if we want, but your argument, I take it, is that you did not waive your right to arbitration. Is that correct? Correct. And the standard here, I believe, is clear error. The trial court correctly found no waiver. And the clear error standard. Did it expressly find no waiver, or did it not address the issue, I guess? It expressly found no waiver. It addressed it. This is in the record at Appendix 270. It addressed the waiver and said it walked through the history of the case. There was a complaint. It was very narrow. It was basically alleging an informational injury from the nondisclosure of a price list. And LACI denied any contract between the parties. And it prevailed on that issue. It got past the pleadings. And so now it gets past the pleadings, and it amends its complaint. And it's an entirely new complaint with a new theory. What was the difference? I think it was the second and third amended complaints. Correct. What was it that changed between the second and third that put your client on notice that the case was subject to arbitration? Because I look at those, there's a lot of differences, but it's hard to find what the material difference is for this argument. I would say that, yes, I think every single paragraph was revised. I would say there were four key changes for purposes of the waiver argument. First, they embrace the contract that they previously said didn't exist. And that is the provider manual. Second, their legal theory of injury and harm is completely different. It used to be this narrow informational injury about not having access to a MAC price list. Now it is there's something wrong with your MAC price. It is arbitrary, unilateral, and below cost. And the remedy they're seeking is for Optum to recalculate every reimbursement payment to every Arkansas pharmacy from 2015 through class certification. So it's breathtaking how broad the claim expanded from an informational injury to this widespread damage. They also expanded the class. It's not just independent pharmacies, but it could include any type of regional chains. We explained how that increased the exposure of the case. And then they added two new counts. Did that change your ability to seek arbitration or just the calculus as to whether or not you wanted to pursue that? I think both. We know now it would have been futile on the pleadings. It would seem to me that if you could have sought arbitration previously, that the fact that something comes in that makes arbitration more desirable would put you in jeopardy for waiver. Not under the line of cases which includes Krensk from the 11th Circuit, which I think has the most thorough discussion of this issue. And this case is easier than Krensk because there the arbitration agreement was in the case from day one. SunTrust told the court, we don't want to arbitrate. We know there's an arbitration agreement. We oppose arbitration. They go through discovery, a motion to dismiss. In the middle of class certification, the plaintiffs changed the scope of their claim. It wasn't just borrowers over 65 years, now it was all borrowers. And the 11th Circuit said that at a minimum revives any waiver there was because you can't waive the right to arbitrate a legal theory or new counts that didn't exist at the time of the alleged waiver. And here we have new counts that didn't exist at the time of the alleged waiver. We have the embracing of the contract that they previously disclaimed. We have a larger class size. And I think most importantly, just this new theory that every reimbursement we processed from 2015 to now was calculated incorrectly. And they want the contract term changed so that it's recalculated. I think. Would you help me understand the relationship between the agreement and the manual? Yes. So the provider agreement is the signed agreement between OptumRx and this PSAO organization. And that agreement did not have arbitration as a. Correct. It was silent. It said that the parties have to meet and confer if there's a dispute. Either can demand mediation and then it was silent about any type of. So if there was a dispute and they couldn't resolve it by mediation or other similar means, there was no restriction to sue under the agreement? No, no restriction. It didn't say what the adversarial type of proceeding would be, whether it's arbitration, whether it's litigation, complete silence. So the manual has the arbitration provision? It does. It's incorporated by reference into the provider agreement and it has the binding arbitration. Okay. So why then don't those conflict? Because a conflict means, if the parties agree on this, the legal test can, is it possible to comply with both? And here we laid out in a reply brief on page 11, step by step, how you comply with both provisions and each step of dispute resolution. We also cite cases saying that silence in one document and addressing that issue in another document is not a conflict. It's per se not a conflict. It's silence and then it speaks on the issue. If there are no further questions, I'd like to reserve the rest of my time for rebuttal. I see none. Thank you, Mr. Holachek. Thank you, Your Honor. Apologize for mispronouncing your name initially. No worries, Your Honor. Mr. Martz? Good morning. May it please the Court. I'm Gary Martz. I'm here for the Applee Lackey drug. I think a lot of context was missing from counsel's discussion of the third amended complaint and this notion that Optum advances throughout the briefing and has advanced here today that something drastically changed when Lackey drug filed the third amended complaint. It didn't. And I think Judge Cobes' question about seeing differences but finding it hard to identify where they were material raises a very good point because they're not material. Some of the primary changes that are made from the previous complaints are to clean up after some parties exited the case, some were transferred to other forums. There were, I think, 13 defendants when the lawsuit was first filed. By the time the third amended complaint was filed, there was one and it was Optum. The other thing is, though, is this constant invocation of the third amended complaint embraced the contract. It embraced the contract. It didn't embrace the contract. If you heard that description, you would think that the third amended complaint mentions the provider manual in almost every paragraph. If you look at the third amended complaint, you see that it's mentioned twice. The provider manual is mentioned two times. But your client did deny, I don't remember if it was the, didn't deny the existence of the contract but it denied that it was bound by the contract. And did that change at the third amended complaint? It did not. When did it change? Because it did change. It changed at some point during the process. The third amended complaint is filed and not long after that, that is when Optum moves to compel arbitration. There was quite a bit of time between that point and the point at which the district court decided the motion to compel arbitration. At some point during that process, there were sufficient documents produced that it was clear at that point that Lackey Drug had agreed to a contract. Prior to that, Optum had not been able to produce a contract that was clearly accepted and that had become Lackey Drug's contract through Lackey Drug accepting the terms of that agreement. But that did happen and Lackey Drug did drop that, its opposition to the contract saying that it was not, that it had never been shown that it had agreed to those terms. So there is a contract at that point. But the third amended complaint did not come in. It didn't assert any sort of a breach of contract claim. It did not change the essential of the case. The essential aspect of this case from the beginning, when it was filed in state court, on through removal to federal court, and on through now has been that Optum has broken Arkansas law through its use of its MAC list. That allegation remains in the third amended complaint. That allegation that that practice breaks Arkansas law. The claim, when the provider manual is mentioned in the third amended complaint, it is mentioned in the context of the, well the first time it's mentioned is just to show that look, this provider manual shows that Optum does exactly what we've said all along. That Optum uses this MAC price to calculate an unfair, insufficient reimbursement to Lackey Drug and other pharmacies. That's the first instance in which it's mentioned. The second time it's mentioned is under the Arkansas Deceptive Trade Practices Act claim, which asserts the same damage here that was asserted throughout the case before. And there's actually a good reason for that. There's only one form of damages available under the Arkansas Deceptive Trade Practices Act. Actual financial loss under the Arkansas Deceptive Trade Practices Act is the only damages available in a private action under that act. So the damages for that claim are the same here in the third amended complaint that they had been throughout the case. The provider manual is mentioned in that context to show that this is what the damages should be to calculate actual financial loss. Actual financial loss is whatever would have been paid without Optum's improper invocation of the MAC list. That's it. That's the only time it's mentioned. Counsel, when were unjust enrichment and equitable estoppel raised? I believe those were added in the third amended complaint. But they arise from the same basic factual premise that every claim in the case has arisen from, from the outset. Which is that Optum's payment under its calculation of reimbursements to Lackey Drug and other pharmacies violates Arkansas law. Those are claims that are based on the same factual premise. What if a defendant just makes the decision that doesn't really care to arbitrate the original causes of action, but when the new ones are added based on whatever considerations they deem appropriate, they decide, yes, we're going to assert our right to arbitrate here. Can't they make that election? I don't believe that they can, your honor. The cases state, and this is just, this is firmly established law, that a party that has a known right to arbitrate has to assert that right at the outset of the case or as early as they possibly can. And they can't let the case grind on for years and years and years like Optum did here. And the thing is, is that Optum is sort of, Optum's position sort of shifts as things go along. But what they originally argued as to why they didn't assert arbitration at the outset is that the claims originally asserted weren't arbitrable. But they were. And they were under their own description of the claims. Because their description of the scope of the arbitration agreement is that it covers disputes over payments that Optum made. From the outset of the case, whether that is in the notice of removal that they filed at the outset, which described this case as a dispute over payments. Or in their motions to dismiss, which did the same thing at the outset of the case. They've known from the outset that this case was one about reimbursements, about payments made by Optum to Lackey Drug. And they knew that it fit the scope of the arbitration agreement. The fact is, is that they asserted one of the dispute resolution procedures, the one that's in the agreement, not the one in the manual that has arbitration. But the one that's in the agreement, they asserted that at the outset of the case. And they said it was mandatory. This has to be done. They didn't mention arbitration. They didn't mention arbitration even though other defendants did move to compel arbitration. There's no explanation in the record for why that is. But it didn't happen. It was never mentioned. They never mentioned arbitration. They waited instead. And during all that time. Well, I gathered a bit from counsel's opening was that in part it was the substance changed in terms of what risk they felt might be in play. And that factored into their concern because the amendments seemed to raise the stakes, so to speak. Your Honor, that is what they claim. But I don't think it's supported by the record. And as I pointed out. Would that be a sufficient basis for being able to invoke arbitration? I think that's an interesting question of law. Because the authority that's cited in their briefing for this notion that a waived arbitration right can be revived. Counsel mentioned the Krentz case from the 11th Circuit. I think that is questionable precedent. And I think it's questionable because when you look at Krentz, if you look at the E.F. Hutton case they also cited in their briefing. Those cases are premised on this idea that there should be a special rule for waiver and reviving arbitration rights under the federal policy favoring arbitration. In Morgan v. Sundance, this is a case that's cited in the briefing for a different purpose. But this is 596 U.S. 411. The United States Supreme Court said that this court's rule on waiver that required a showing of prejudice was not, overruled that case law from this court saying that the court can't favor arbitration in that manner. You can't impose requirements on rules like waiver rule that are different from the way waiver functions in any other context. And so what happens here with the Krentz case, with the E.F. Hutton case, is there's this notion of revival that's appended to the waiver rules that I don't think would withstand the same sort of scrutiny as in Morgan v. Sundance. Because Optum hasn't cited any case, this contract is subject to California law. They haven't cited any California law for the notion of reviving a waived arbitration right or reviving any waived right. They haven't cited Arkansas law on that point. They haven't cited any law on that point other than Krentz and E.F. Hutton. So I would suggest to the court that there is no authority for this notion, certainly not from this court. Well, counsel, are claims arbitrated or is a subject matter arbitrated? Are a set of facts arbitrated? And then any, going with it, any conceivable claim that someone, that the plaintiff may come up with at any point during the proceeding or into the arbitration? And it just seems to me that it's the claims that are arbitrated. I believe that is correct, Your Honor. And these claims were not asserted until late. Your Honor, they were, these claims, you're right. These theories were not asserted until later. But they had the same underlying premise as the claims before. They sought the same damages as before. You know, again, the actual financial loss for the Deceptive Trade Practices Act claim has been in the case from the beginning. The remedy for unjust enrichment has been in the case since the beginning. The First Amendment complaint, which is in the supplemental appendix, it asked for disgorgement. So I don't think it changed the scope of the case. In those cases that they cite, I think they're distinguishable on the facts as well as the lack of authority for them, because this Third Amendment complaint did not change the scope of this case. It did not make a broad, sweeping change to the case. This case is about the reimbursement rates that are paid to Lackey Drug. It was from the beginning. It was through the time, the two and a half years, that Optum chose to litigate the case. And it was in the Third Amendment complaint. The addition of these new theories didn't change the factual premise of the case was the same. And I think that if the court allows waiver to be rescinded or waived right to be revived, any time a party files an amended complaint, then it's going to be a lot of arbitration litigation that's going to come in late in the case, because complaints do get amended. And they do assert different theories arising from the same operative facts. But the fact of the matter is here that Optum could have moved to compel arbitration from the outset. Chose not to. And there isn't anything that happened in this case that changed the case so drastically that it should have revived that waived right. Thank you, Mr. Marks. Thank you. Mr. Holacheck, your rebuttal. Thank you, Your Honor. We are not asking for a rule that any time a plaintiff amends the complaint, it revives a right to arbitration. What happened here was very unique in that there was a narrow complaint about informational injury, and the party disclaimed any contractual relationship. And then, and they won on that issue. And then they amended their complaint after the pleadings closed and broadened the scope of the relief. It was not a case always about reimbursements. Then they embraced the contract in the complaint. They still denied, though, that they had a contractual relationship. We actually had to get a discovery. There were three depositions. There were subpoenas until finally Lackey could not disavow the contract anymore because their contract with their PSAO had been produced. And so we're not asking for a broad rule that any time there's an amended complaint that that revives the right. Given the unique situation here and the conduct of the parties, the trial court was in the best position to find that there was no waiver. And like I said, the Seventh Circuit brick structures case, which is cited in our brief, I think really explains well what is de novo here, which is whether the trial court articulated the right legal standard. Counsel, does the Third Amendment complaint, does it include a contract claim or not? There's unjust enrichment added, right? There's something else added. Equitable estoppel added. Is there a contract claim in there as well or not? It's not a breach of contract, but their Arkansas Deceptive Trade Practices Act is totally changed from this informational injury to now the quote, this is paragraph 44 of the Third Amendment complaint, they quote the provider manual and say, here is your formula. And we want a court order saying you have to recalculate every payment you've made since 2015 without the MAC pricing. So I think it's best analogized to a reformation of contract claim. They want the court basically to reform the contract and have it say something that it doesn't. So it's not specifically breach of contract, but they're embracing the contract. And then very quickly on Judge Smith's question about whether silence in one agreement conflicts with a provision that addresses arbitration. I would refer the court to our opening brief, pages 18 through 20. Where we cite cases that involve this type of situation, where arbitration's silent in one document, but then provided for in another. As the panel, I think, understands, our primary argument is that this issue should have been decided by an arbitrator because there's a delegation clause. But even if a court is to decide it, the court here erred, and it should be reversed. Thank you, Your Honor. Thank you, counsel. Court appreciates counsel's participation in argument before the court. It's been helpful. We're going to continue to study the matter and render decision in due course. Thank you. Counsel may be excused.